**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**SUNQUEST PROPERTIES, INC. and
COMPASS POINTE APARTMENTS
PARTNERSHIP,**                                                                    **PLAINTIFFS**

**v.**                                                        **Civil Action No. 1:08-CV-692-LTS-RHW**

**NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY
and JOHN DOES 1-5**                                                            **DEFENDANTS**

**NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION TO STRIKE THE REPORT AND TESTIMONY OF
PLAINTIFFS' EXPERT JOHN MYERS**

Defendant Nationwide Property and Casualty Insurance Company ("Nationwide") files

this Motion to Strike the Reports and Testimony of Plaintiffs' Expert John Myers.  In support of

its Motion, Nationwide states the following:

1.      Plaintiffs have designated John Myers as an expert in real estate market

conditions.  Over the course of discovery in this matter, Mr. Myers has provided two written

reports and deposition testimony addressing one subject area: the "general economic impact

within the local market area of the above referenced apartment complexes in the post Hurricane

Katrina era."  (*See* June 29, 2009 Ltr. J. Myers to M. Brown (Ex. 1).)  More specifically, Mr.

Myers opines that "the apartment market … was very active in the post-Katrina era."  (*See* Oct.

27, 2009 Ltr. J. Myers to M. Brown (Ex. 2).)  This, he says, is because "[m]any apartments

suffered severe damage and consequently the supply of apartment units available was cut by

nearly 70% after Katrina.  As a result, there was a tremendous demand … ." (*See* June 29, 2009

Ltr. J. Myers to M. Brown (Ex. 1).)

2.      Notably, however, Mr. Myers has repeatedly denied that he has any specific

knowledge regarding the property actually at issue in this case – the Compass Pointe Apartments

("the Property").  (*See* Nov. 11, 2009 Dep. of J. Myers at 65-67, 146 (Ex. 3); and Jan. 27, 2010 Dep. of J. Myers at 8 (Ex. 4)).[1]  He offers no opinions or calculations concerning the specific alleged effects of the post-Katrina market conditions on the subject property.  (*See* Ex. 3 at 21, 23, 41; and Ex. 4 at 27-29.)  Nor has he reviewed any revenue histories for the Property, even though he was retained to testify regarding the Property's revenue potential.  (*See* Ex. 3 at 22; and Ex. 4 at 27, 50.)

3.      As a result, Myers should not be permitted to testify regarding these so-called "market conditions" following Hurricane Katrina for two reasons.  ***First***, his proposed opinions are not the product of any scientific methodology or specialized knowledge; they are merely general opinions of supply and demand following Hurricane Katrina.  Indeed, Myers admitted that such opinions are matters of common knowledge to Gulf Coast residents (and potential jurors) that he likewise ***assumed*** in preparing his reports.  (*See* Ex. 3 at 41 ("[I]n a supply is less than demand society, ***we all know*** that the market is going to react with higher rents, and it did.") (emphasis added); and Ex. 4 at 38 ("I don't know specifically other than I would assume.  And I may even have it in the file that probably the rents were higher in the post-Katrina only because they were allowed to get a – you know, ***there was so much demand and not enough of supply that they were able to get higher rents***") (emphasis added).)  ***Second***, and perhaps more importantly, Mr. Myers' proposed testimony is wholly irrelevant to this case and will not assist the trier of fact.  Consequently, Plaintiffs cannot meet the threshold admissibility requirements

---

[1] During the deposition of John Myers in this case, Plaintiffs' counsel stated that he had no objection to using Mr. Myer's deposition testimony from the companion *Carriage House* case in the present matter.  *See* Ex. 4 at 6, lines 7-29.

for expert testimony under Federal Rule of Evidence 702 and supporting case law, including

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

4.      Rule 702 of the Federal Rules of Evidence specifically provides:

> If ***scientific, technical, or other specialized knowledge*** will ***assist the trier of fact***
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

F.R.E. 702  (emphasis added).  The comment to Rule 702 further explains:

> Whether the situation is a proper one for the use of expert testimony is to be
> determined on the basis of assisting the trier.  "There is no more certain test for
> determining when experts may be used than the common sense inquiry whether
> the untrained layman would be qualified to determine intelligently and to the best
> possible degree the particular issue without enlightenment from those having a
> specialized understanding of the subject involved in the dispute."  Ladd, Expert
> Testimony, 5 Vand. L. Rev. 414, 418 (1952).  ***When opinions are excluded, it is
> because they are unhelpful and therefore superfluous and a waste of time***.

*Id*. at cmt. (emphasis added).

5.      Similarly, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, expert testimony

is only admissible if it is both relevant and reliable.  *Daubert*, 509 U.S. at 589.  For an expert's

testimony to be relevant, the party offering the testimony must make a showing that the proffered

testimony will "assist the trier of fact" in determining the issue for which it is offered.  F.R.E.

702.  With respect to reliability, all types of expert testimony submitted under Rule 702 must

satisfy two foundational requirements: (1) the expert is qualified to render the opinion proffered;

and (2) the opinion is scientifically valid and methodologically sound.  *Daubert*, 509 U.S. at 592-

93.  Here, the burden rests on the Plaintiffs to establish that Mr. Myers' proffered testimony

meets these prerequisites to admissibility.  *Id.*

6.      As a preliminary matter, Mr. Myers' proposed testimony should be excluded because it does not meet the threshold definition of expert testimony under Rule 702 – namely Mr. Myers' opinions are not the product of any specialized knowledge or scientific methodology. Instead, Mr. Myers' so-called explanation of the post-Katrina economic impact is nothing more than a personal recitation of the basic principles of supply and demand.  Rather than giving any information or calculations specific to the Property itself – such as projections of the total possible rents Plaintiffs may have charged in the year(s) following the storm, Mr. Myers simply states that "Those projects that were able to respond immediately after the storm, gained high occupancies, higher rents and waiting lists for tenants."  (*See* June 29, 2009 Ltr. J. Myers to M. Brown (Ex. 1).)   Applying the "certain test" of "whether the untrained layman would be qualified to determine intelligently and to the best possible degree" whether housing demands and costs increased in the immediate aftermath of Hurricane Katrina, the clear answer to that in this case is "yes."  *See* F.R.E. 702, cmt.  Thus, Mr. Myers' proposed testimony to the same effect would be "unhelpful and therefore superfluous and a waste of time."  *Id.*

7.      Furthermore, Mr. Myers admitted during his deposition in this case that his opinion regarding increased rents was based upon an assumption – not facts.  **(***See* Ex. 4 at 38 ("I don't know specifically other than I would assume. … I cannot state that as a fact because I don't know.").)  The Fifth Circuit has held that district courts should exclude expert testimony such as this, which is based on nothing more than speculation or assumption.  *See Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996).   As a result, Mr. Myers' testimony is insufficient to pass *Daubert* muster on these grounds as well.

8.      Additionally, Mr. Myers' testimony should be excluded because it is altogether irrelevant to this case.  "When evaluating expert testimony ***the overarching concern is whether***

*or not it is relevant* and reliable." *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (citing *Daubert*) (emphasis added). "In determining relevance, the [c]ourt considers whether 'expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Knight v. Kirby Inland Marine, Inc.*, 363 F. Supp.2d 859, 862 (N.D. Miss. 2005) (quoting *Daubert*, 509 U.S. at 591). "Put differently, **Rule 702 'requires a valid scientific connection to the pertinent inquiry** as a precondition to admissibility.'" *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (quoting *Daubert*, 509 U.S. at 592) (emphasis added). Conversely, "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Childs v. Entergy Miss., Inc.*, No. 2:08CV77-P-A, 2009 WL 2508128, *2 (N.D. Miss. Aug. 13, 2009) (citations omitted).

9.      Plaintiffs have sued Nationwide alleging it improperly adjusted their insurance claim in bad faith. Thus, the pertinent issues before the Court (and ultimately the jury) are whether there are any outstanding benefits owed by Nationwide under the subject Policy and, if so, how much. Mr. Myers' proposed testimony regarding the "general economic impact within the local market area" of the Property has nothing to do with these issues. Stated differently, Mr. Myers' opinions regarding supply and demand and heightened rental rates will not assist the jury in determining whether the Plaintiffs are entitled to more money under the subject Policy. This is especially true in light of the following unambiguous policy provision:

    B.    Exclusions

        2.    We will not pay for loss or damage caused by or resulting from any of the following:

            b.    **Consequential losses:** Delay, loss of use or loss of market.

(*See* Business Providers Special Coverage Form at § B(2)(b) (<u>Ex. 5</u>) (emphasis in original).) Thus, even if Plaintiffs contend that Mr. Myers' testimony is somehow pertinent to the amount

of "business income" they may have been able to obtain in the months following Hurricane Katrina, that testimony is still irrelevant because the Policy unambiguously precludes Plaintiffs from recovering such "consequential losses."[2]

10.    Furthermore, even assuming *arguendo* that evidence related to consequential losses is somehow relevant to Plaintiffs' case, Mr. Myers' testimony still does not assist the trier of fact because it is not sufficiently tied to the facts of ***this case***.  *See Knight*, 363 F. Supp.2d at 862.  Mr. Myers admitted during his deposition in this case as well as in *Carriage House* that he has no specific knowledge about the Property at issue.  (*See* Ex. 3 at 65-67 (admitting he never visited the Property after Katrina, has never been inside any units at the Property, has never seen photographs of the Property following Katrina, and has never compared the pre and post-renovation conditions of the Property); and Ex. 4 at 8, 33 (admitting he is not attempting to address the Property specifically and has actually never inspected or visited the Property).)

11.    He also has not prepared any calculations or formulated any opinions regarding the income potential of the Property during the months after the storm.  (*See* Ex. 3 at 22-23 ("Q: Have you made any determination as to the specific revenue either property could have generated after Hurricane Katrina?  A: No, I have not.  Q: Have you been asked to make such determinations?  A: No."); *id*. at 41 ("Q: Have you made any effort to quantify how much you believe the demand for apartment units rose after Hurricane Katrina in the southeastern Jackson County area?  A: I have not made an attempt to quantify that."); and Ex. 4 at 27-28 ("Q: Have you reviewed … any records concerning the revenue generated by Compass Pointe…?  A: I have

---

[2] Moreover, to the extent Plaintiffs are arguing for consequential losses as extra-contractual damages, those claims fail for the reasons stated in Nationwide's Motion for Summary and separate Memorandum in Support thereof; thus, Myers' potential testimony would still be irrelevant to the Plaintiffs' claims.

not.  Q: Have you made any determination in any way as to the revenue generated by either Compass Pointe or [] after Hurricane Katrina?  A: I have not.").)  Nor does Mr. Myers have any knowledge of what the revenue history and rental rates of the Property actually were at the time of and prior to Hurricane Katrina.  (*See* Ex. 3. at 22 ("Q: Have you reviewed any records concerning the revenue that either property generated during the time they were owned by plaintiffs?  A: No."); and Ex. 4 at 28 ("Q: Were you familiar with or did you know the income generated by those two properties prior to Hurricane Katrina?  A: No.").)  This testimony reveals that there is nothing that John Myers could tell the jury that would in any way aid them in determining the disputed facts and issues involved in this case.  As a result, his reports and proposed testimony should be stricken.

12.    Finally, Mr. Myers' testimony should be excluded because his opinions – which center on the notion that Plaintiffs would have been able to charge dramatically higher rents after the storm if the Property had been renovated quickly – are contrary to Mississippi law.  In Mississippi, a plaintiff may not recover damages premised upon an unlawful act.  Mississippi Courts have long recognized the old maxim, "*ex dolo malo non oritur actio*," or, "no Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act."  *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484 (Miss. 2006).

13.    The price-gouging statute in the Mississippi Code provides that whenever "a state of emergency or a local emergency is declared to exist in this state, then the value received for all goods and services sold within the designated emergency impact area ***shall not exceed the prices ordinarily charged*** for comparable goods or services in the same market area at or immediately before the declaration of a state of emergency or local emergency."  Miss. Code Ann. §75-24-25(2) (emphasis added).  On September 26, 2005, Governor Haley Barbour

Case 1:08-cv-00692-LTS-RHW    Document 216    Filed 02/16/2010    Page 8 of 11

declared a state of emergency throughout Mississippi, which lasted in Jackson County until January 11, 2008. In addition, on November 21, 2005, Attorney General Jim Hood issued an opinion stating that **the price-gouging prohibition found in Section 75-24-25 applied to residential real estate leases**. *See* Attorney General Opinion No. 2005-0554, 2005 WL 3775648, *2 (Miss.A.G. Nov. 21, 2005) (citing *O'Cain v. Harvey Freeman and Sons, Inc.*, 603 So. 2d 824 (Miss. 1992) (finding that residential tenants are consumers of goods and services and thus entitled to the same protections extended to purchasers of any other goods or services) (emphasis added)).

14.    This statutory limitation on Plaintiffs' potential for charging tenants higher rents after Katrina is consistent with the longstanding precedent that a policyholder can only recover for consequential damages based on pre-storm conditions – in other words, that insureds are not entitled to windfalls simply because they suffered a casualty loss. *See Catlin Syndicate Limited v. Imperial Palace of Miss., Inc.,* No. 1:08CV97-HSO-JMR, 2008 WL 5235888, at *7 (S.D. Miss. Dec. 15, 2008) (calculating loss profits based on profits casino would have generated if Hurricane Katrina had never occurred, rather than the higher post-storm based figures insured claimed). Thus, were Mr. Myers permitted to testify that Plaintiffs would have been able to charge "double the rents" at the Property after the storm, he would essentially be usurping the Court's exclusive role in instructing the jury on matters of Mississippi law – and he would be instructing them incorrectly at that. *See WMS Indus., Inc. v. Federal Ins. Co.*, No. 1:06CV977-LG-JMR, 2008 WL 5622538, *1 (S.D. Miss. Apr. 16, 2008) (recognizing that the Court alone has the duty and responsibility to charge the jury with the applicable law); *U.S. v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) (finding that experts are not permitted to substitute their judgment for the Court in charging the jury with the applicable law); and *Willette v. Finn*, 778 F.

3102897.1/09446.31689                                                    8

Supp. 10, 11 (E.D. La. 1991) (citations omitted) ("It is not for witnesses to instruct the jury as to applicable law, but for the [J]udge."). As a result, Mr. Myers' proffered testimony is wholly misleading and unhelpful to the jury in this case. It must not be admitted.

15.    For the foregoing reasons, Mr. Myers' proposed opinions are neither appropriate for expert testimony, nor are they relevant to the issues before the Court and the jury in this case. Introduction of Mr. Myers' testimony would only serve to confuse the jury and ultimately prejudice Nationwide. Nationwide's Motion should therefore be granted, and the Court should enter an Order striking John Myers as an expert witness and excluding his reports from evidence at trial.

16.    Due to the nature of this Motion, in which all pertinent legal authorities have been set forth fully herein, Nationwide respectfully requests that the Court waive its requirement of a separate memorandum of authorities under L.U.Civ.R. 7.2(b)(4).

17.    In support of its Motion, Nationwide attaches and incorporates by reference the following exhibits:

Exhibit 1:    June 29, 2009 John Myers Report

Exhibit 2:    October 27, 2009 John Myers Report

Exhibit 3:    November 11, 2009 Deposition of John Myers in *Sunquest Properties and Carriage House Apartments Partnership v. Nationwide Property and Casualty Insurance Company, et al.*, Civil Action No. 1:08-CV-687-LTS-RHW (S.D. Miss.)

Exhibit 4:    January 27, 2010 Deposition of John Myers in *Sunquest Properties and Compass Pointe Apartments Partnership v. Nationwide Property and Casualty Insurance Company, et al.*, Civil Action No. 1:08-CV-692-LTS-RHW (S.D. Miss.)

Exhibit 5:    Nationwide Business Providers Special Coverage Form

WHEREFORE, PREMISES CONSIDERED, Nationwide respectfully requests that its Motion be granted and that the Court enter an Order striking Plaintiffs' proffered expert, John

Myers, and precluding him from offering any testimony or documentary evidence, including expert reports, at the trial of this matter.

THIS, the 16th day of February, 2010.

Respectfully submitted,

NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY, DEFENDANT

By Its Attorneys
WATKINS LUDLAM WINTER & STENNIS, P.A.

By:    /s/ Laura L. Hill
        LAURA L. HILL
        lhill@watkinsludlam.com

H. Mitchell Cowan (MSB No.7734)
Laura Limerick Gibbes (MSB No. 8905)
F. Hall Bailey (MSB No. 1688)
Janet D. McMurtray (MSB No. 2774)
Christopher R. Shaw (MSB No. 100393)
Laura L. Hill (MSB No. 102247)
WATKINS LUDLAM WINTER & STENNIS, P.A.
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, MS 39205
Telephone: (601) 949-4900
Facsimile: (601) 949-4804

Of Counsel:
Daniel F. Attridge, P.C. (Bar No. 44644)
Christian D.H. Schultz (Bar. No. 44747)
Robert B. Gilmore (Bar No. 44997)
Kate S. O'Scannlain (Bar No. 45034)
Jeffrey A. Todd (Bar No. 45916)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, DC 20005
Tel:  (202) 879-5000
Fax: (202) 879-5200

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing using the Court's ECF system, which sent electronic notification of such filing to:

> Nathan M. Gaudet
> Matthew K. Brown
> SULLIVAN, STOLIER AND RESOR, APLC
> 909 Poydras Street, Suite 2600
> New Orleans, LA 70112
> 504/561-1044
> Fax: 504/561-8606
> ngaudet@ssrlawfirm.com
> mbrown@ssrlawfirm.com

This the 16th day of February, 2010.

> By: ___/s/ Laura L. Hill_____
> LAURA L. HILL
> lhill@watkinsludlam.com