IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUNQUEST PROPERTIES, INC.  and                                                    PLAINTIFF
COMPASS POINTE APARTMENTS PARTNERSHIP

 VS                                                    CIVIL ACTION NO. 1:08-CV-692-LTS-RHW

NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY; NATIONWIDE MUTUAL
INSURANCE COMPANY; NATIONWIDE MUTUAL
FIRE INSURANCE COMPANY; and
JOHN DOES 1-5                                                                      DEFENDANTS

MEMORANDUM IN OPPOSITION
TO NATIONWIDE'S MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

According to the Fifth Circuit, a court considering a defendant's motion for summary judgment must view the evidence in the light most favorable to the non-moving party, and the movant has the burden of showing that summary judgment is appropriate. *Reyes v. Weslaco Independent School Dist., et al*., No. 09-40231 (5th Cir. Dec. 3, 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Summary judgment is appropriate only where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Reyes* (citing Fed. R.Civ.Proc. Rule 56(c)).  *See also* 2007 Amendments Advisory Committee Notes (observing that the Rule 56(c)'s standard for summary judgment is "that there is no genuine issue as to any material fact").  In light of this clear standard, the discovery and depositions taken in this case, and the ruling of this Court in *Sunquest Properties, Inc. & Carriage House Apartments Partnership v. Nationwide Property*

*and Casualty Insurance Company* ("*Carriage House*"), which is substantially similar factually to this matter, Nationwide's summary judgment motion is groundless.

**I.  GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT**

    **A.  Plaintiff's expert, Lewis O'Leary, had described extensive flaws in Nationwide's estimates, which create issues of material fact regarding the damage and Nationwide's good faith.**

Like its argument in *Carriage House*, Nationwide states that Plaintiffs should not be allowed to rely on Mr. O'Leary's most recent damage estimates due to issues of timeliness.[1] However, Mr. O'Leary's timely filed report not only estimated damage but also set out numerous areas of disagreement with Nationwide's experts, regardless of later revisions. The majority of the changes to Mr. O'Leary's estimates are revisions of dollar amounts involved. Nationwide cannot show, as it could not in the *Carriage House* case, that Mr. O'Leary's original report and estimates were "invalid in every detail." *Sunquest Properties, Inc et al. v. Nationwide Property and Casualty Insurance Company*, 1:08-CV-687-LTS-RHW (S.D. Miss. 2010), Feb. 19, 2010 [Doc. 248] Memorandum Opinion, p. 3. Further, as in the *Carriage House* case, genuine issues of fact remain regarding other issues.

While Mr. O'Leary admitted that some later-received photographs contradicted some aspects of his damage estimates, his initial evidence was accurate. This accurate evidence supports other aspects of Mr. O'Leary's damage estimates, which support contested issues of

---

[1] This argument is surprising considering the pattern with which Nationwide's own expert, Mr. Robert Martin, has supplemented his damage estimates. Further, at his deposition, Mr. Martin was questioned about his findings summary of his initial estimate in September 2009 and his first revision in January 2010. Of the findings summary of his September 2009 estimate, Mr. Martin said, "It shows information based on the information that I had at that particular time. Since this report was written, we've had other review of photos and so forth so it's been updated since this." Please see deposition of Robert Martin, p. 44, attached as Exhibit "A." Apparently Mr. Martin subscribes to Mr. O'Leary's viewpoint when it comes to updating estimates – if additional or new evidence is viewed that changes that estimate, the estimate should be updated.

material fact.  Mr. O'Leary also reported and testified[2] to substantial disagreements with Nationwide's estimates of the damage to the property.  These disagreements alone, regardless of what final conclusions are admitted as to the amount of damage, create a genuine dispute as to the validity of Nationwide's estimates, which therefore creates issues to be decided by the finder of fact at trial.

Even with the limited evidence he had at his disposal at the time, Mr. O'Leary arrived at conclusions which show a genuine issue of material fact in this matter.  Notably, Nationwide does not attack the accuracy of the evidence Mr. O'Leary viewed to arrive at his conclusions but instead argues that his report was not based on the "wealth of information" he has since received.  However, Mr. O'Leary had accurate photographs, just not as many as were available.  Despite Nationwide's contention, Mr. O'Leary did not completely disavow his original estimates as if they were faulty in every way.  He testified that they were not as accurate as they should be in some details, which he felt he could correct with a revision.  Revisions aside, Mr. O'Leary's original estimates show dispute with those of Nationwide.

Even with limited photographic evidence, Mr. O'Leary was able to point to contested issues which must be decided by the finder of fact.  As Plaintiffs argue in their Opposition to Nationwide's Motion to Strike Lewis O'Leary as Plaintiffs' Litigation Expert, Mr. O'Leary should be able to testify in this matter as Plaintiffs' expert.  As such, the issues of disagreement with Nationwide Mr. O'Leary noted in his unquestionably timely report should be heard by the jury even in the event the Court decides that Mr. O'Leary's revisions cannot be used.  These issues should defeat Nationwide's Motion for Summary Judgment.

---

[2] The questions posed with respect to whether Mr. O'Leary may testify at trial are already submitted to the Court in the context of other motions.

For example, Mr. O'Leary in his report and initial damages estimate[3] noted that Nationwide's original estimates provided no decking replacement, which Mr. O'Leary noted is supported by photographic evidence. Please see Report of Findings, p. 5, attached as Exhibit "B." Nationwide's expert, Mr. Robert Martin, did not provide for the any decking replacement in his estimate. For example, at Apartment 4108, Mr. O'Leary's original estimate includes decking replacement, but the corresponding estimate by Mr. Martin includes none. Please see original estimate for Apartment 4108 by Mr. O'Leary, attached as Exhibit "C" and original estimate for Apartment 4108 by Mr. Martin, attached as Exhibit "D." Nationwide does not address this issue of material fact, but it is widespread. Nationwide allows a grand total of zero dollars for plywood decking replacement in its initial estimate. Mr. O'Leary, on the other hand, allows decking repair of some amount in each building. The need for at least some decking replacement is further supported by the deposition of Mr. Greg Stewart, owner of Madison Homes, who bought and refurbished the property following the hurricane. Please see relevant portions of Mr. Stewart's deposition, p. 15, attached as Exhibit "E." Even Mr. O'Leary's latest revisions and Mr. Martin's latest revisions differ substantially in the amount of decking to be replaced. This is but one genuine issue of material fact.

Rather than scrutinize each and every difference between the Mr. O'Leary's report and initial estimate and Mr. Martin's estimate, which would only waste time and paper, Plaintiffs submit to the Court that *many* other such differences exist when the two estimates are laid side by side. Nationwide makes much of the timeliness of Mr. O'Leary's revised estimate (but does

---

[3] Obviously, if Nationwide argues that Mr. O'Leary's supplemental reports cannot be used at trial based on the issue of timeliness, as it does at pp. 14-15 of its Memorandum in Support, it cannot argue that its own expert's supplemental reports, which suffer from the same timeliness problems, should be used. Further, the fact that Nationwide's expert revised his estimate twice in a similar fashion as Mr. O'Leary indicates that his original estimate is also "unreliable." Therefore, in this Memorandum in Opposition, Plaintiffs will reference only Nationwide's expert's initial and timely estimates as well as the initial report and estimates of Mr. O'Leary.

not confront its own, nearly identical, timeliness issues) but fails to address the many issues of fact between the two original estimates. For this reason alone, Nationwide's motion should be denied.

Like in *Carriage House*, the problem with Mr. O'Leary's initial estimates was simply a monetary damages issue. The same real damages issues exist regardless. Summary judgment is not a vehicle for separating the damages line-by-line and deciding which contain genuine issues of fact. Summary judgment cannot possibly account for the thousands of lines of damage in the estimates. Throughout this matter, Plaintiffs and their representatives have consistently stated that this is an imperfect process. Nationwide's insistence that each and every line of its estimate is unquestionably correct is disingenuous. Mr. Martin provided his initial report on September 28, 2009, completed his first revision on January 3, 2010, and completed his second revisions on January 29, 2010, long after both the discovery cut-off and his deposition date. Both of these revisions resulted in additional payments to Plaintiffs. As noted by the Court in *Carriage House*, the fact that Nationwide has made two additional payments exceeding $100,000 is sufficient to support Plaintiffs' original claim that Nationwide underpaid this claim upon its original evaluation. Considering the complexity of the damages involved in this case and the many contested issues concerning these damages, issues of fact exist to defeat Nationwide's motion for summary judgment.

> **B.** **The reports of the meteorologists of each party suggest that damage-causing wind could have resulted in first floor wind damage.**

It is undisputed that the roofs of the buildings were badly damaged by the storm and that approximately two and one half feet of water entered the buildings. Based on the reports of meteorologists retained by both parties, who are nearly in agreement, damage-causing winds hit the property prior to the arrival of the flood waters. Thus, even some of the areas below the

watermark left on the buildings could have been damaged by rain entering from the roofs that were destroyed even before any rising water arrived at the structures.

From these facts alone, a reasonable person could infer that only the first floor carpets and approximately one-third of the first-floor walls, and none of the ceilings, roof, or other items above three feet, were damaged by flood water.  In fact, given the sequence of weather events that is virtually undisputed by either side, a reasonable finder of fact could also conclude that much of the damage below the water line had already occurred with sufficient severity prior to the rising flood waters so that there was a covered loss under the policy even below the water line.  This is a genuine issue of fact.

### C. Nationwide cannot simultaneously disavow the cost to repair incurred by Madison Homes while relying on the same amount to support its claim of a damage cap.

As with the Carriage House property, Mr. Greg Stewart and his company Madison Homes purchased the Compass Pointe property from Plaintiffs following the storm.  He proceeded to "flip" the property by repairing it with his own labor and selling it.  Mr. Stewart's work differed in scope from that proposed by the experts of both parties here, as both Mr. Martin and Mr. O'Leary produced estimates that differ from Mr. Stewart's costs.  Mr. Stewart spent approximately $1.5 million to repair the property with relatively few upgrades. [4]  Nationwide in effect simultaneously says that this number is irrelevant but constitutes some sort of damage cap.

Nationwide claims that this Court's ruling in *Legacy Condominiums, Inc. v. Landmark American Insurance Company*, No. 1:06-CV-1108-KS-MTP (S.D. Miss. 2008) mandates partial summary judgment in Nationwide's favor on the maximum recovery to be afforded Plaintiffs.

---

[4] As usual, Nationwide takes great liberty with the testimony of others.  Nationwide claims that Mr. Stewart's company, Madison Homes, performed "substantial upgrades" to the property, but offer no proof of this claim.  Mr. Stewart testified, regarding many of these "upgrades," that he spent as little money as possible.  Please see, e.g., Exhibit E, pp. 33 and 45, in which he said he spent "as little [money] as possible," and p. 41 where Mr. Stewart testified that granite countertops are actually cheaper than laminate.

Nationwide claims that because Mr. Stewart's company spent $1.5 million repairing the property, Plaintiffs cannot collect more than this amount. Apparently Nationwide does not think too highly of this argument, as it is conspicuously absent from Nationwide's arguments in *Carriage House*. Perhaps this is because Mr. Stewart spent approximately $5.4 million to repair the Carriage House property. Regardless, the *Legacy* decision is distinguishable from this *Compass Pointe* case.

In *Legacy*, the insured property was repaired. No. 1:06-CV-1108-KS-MTP [Doc. 69], p. 4, attached as Exhibit "F." Apparently, this repair was paid for by the policy holder, who still "owned" the property.[5] See, Plaintiff's Response to Landmark's Motion for Summary Judgment, No. 1:06-CV-KS-MTP [Doc. 65], p.2, attached as Exhibit "G." The plaintiff then sought to include, in its damage estimates, amounts that were either spent or were to be spent by owners of the individual condominium units. Exhibit F, p. 5. These were amounts that the plaintiff itself was not responsible to repair. *Id.* In that case, the Court ruled that the cost of the actual repairs superseded the prior estimates of those costs. *Id.* This case is different in a number of ways.

In *Legacy* the plaintiff apparently repaired the property itself. Most likely due to the condominium declaration, individual unit owners were responsible for some repairs. The condominium association, as plaintiff, then sought to recover those amounts to which it was not entitled. The Court refused and held that actual repair costs superseded the prior estimates. Here, the plaintiff did not repair the property and did not retain ownership. Nationwide has put

---

[5] The property in that case was part of a condominium regime, which is subject to special rules and generally managed by a condominium association, which the plaintiff in *Legacy* was. The condominium association did not actually "own" the property, each unit made up the condominium regime, and the association collectively owned some parts of the property.

7

on no proof that, had Plaintiffs repaired the property, it would have surely cost $1.5 million or less.

Anyone who has built his own home knows that the price of the construction can and does change over time. Madison Homes is in the business of repairing and building apartment complexes. Exhibit E, p. 7. This enabled Mr. Stewart to keep costs down. Nationwide is sure to point out that even including 20% for overhead and profit, the amount is only approximately $1.8 million. However, construction post-Katrina on the Gulf Coast was an unpredictable animal. One could easily envision costs of such a job skyrocketing if a property owner had to use a general contractor he had hired from the phonebook. That property owner would have had no control over materials cost or an inflated overhead and profit charge. Had Plaintiffs paid for the repairs themselves then *Legacy* would control, but here amounts spent by a general contractor who flipped the property are not controlling. In fact, the estimates in this case are not even "prior estimates" that were made before the repairs as in *Legacy*. Too many possibilities exist that could have changed the $1.5 million spent by Mr. Stewart. No amount spent by Mr. Stewart, who spent "as little as possible" in many areas, can constitute a cap to Plaintiffs' potential recovery.

      D.      **Sufficient evidence exists to support a genuine issue of material fact regarding extra-contractual damages.**

Under Mississippi law, a finding that Nationwide acted in bad faith leading to punitive damages would be based on the following factors as set out in *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264 (5th Cir. 2008):

1. Nationwide denied the insured's claims in part or in full;

2. Nationwide owed payment under the policy, but did not did not fulfill its obligation;

3. Nationwide had no legitimate or arguable reason to refuse to pay the claim or to perform its contractual obligation; and

4. Nationwide's conduct in breaching its obligation must rise to the level or an intentional tort, i.e., at least gross negligence.

Extra-contractual damages (as opposed to punitive damages) may be awarded even in the absence of intentional or grossly negligent conduct. *Universal Life Ins. Co. v. Veasley,* 610 So. 2d 290, 295-296 (Miss. 1992). Thus, a showing of items 1, 2 and 3 above would support an extra-contractual damage award in favor of plaintiffs, even without the intentional or grossly negligent conduct required for a punitive damages award.

As is always the case, plaintiffs' arguments regarding whether or not the insurer acted in bad faith, involve more difficult issues of proof that just proving damages. To receive extra-contractual damages, plaintiffs must convince the trier of fact that Nationwide had no reasonable basis for the actions that it took. There is sufficient evidence developed at this point through discovery to defeat summary judgment on these issues. Consider the following facts shown in discovery and the public record:

1. While Nationwide complains that Plaintiffs never provided a calculation of extra-contractual damages, Mr. Brockman provided a detailed analysis of these damages. In significant detail, Mr. Brockman testified that Plaintiffs lost approximately $157,000.00 per year, based on rental figures from years immediately preceding the storm. Please see deposition of Ralph Brockman, pp. 206-214, attached as Exhibit "H." This $157,000.00 annual loss is compounded by the fact that Plaintiffs were not in the business of "flipping" property. Plaintiffs' business history shows that they preferred to maintain these income-producing assets without

selling them.  As such, an estimation of ten years of loss at $157,000.00, adjusted for future values, is not unreasonable.

     2.     Nationwide's own hired expert adjusted his estimate upward substantially during the course of this litigation.  This behavior mirrors Nationwide's behavior in *Carriage House*.  As in *Carriage House*, Mr. Martin in this case has revised his damage estimates twice, the most recent on January 29, 2010 (received by Plaintiffs on February 1, 2010).  Nationwide has not claimed that Mr. Martin was not in possession of all of the information it had – engineering reports, photographs, other estimates, etc. – at the time of his initial estimate.  Even still, Mr. Martin's revisions came very recently, more than four years after Nationwide first paid and attempted to stonewall Plaintiffs' attempts to have the claim properly valued.  This is a question of fact impacting the issue of whether Nationwide's payments were timely and consistent with its duties under Mississippi law.

     3.     Moreover, even though Nationwide was presented with meaningful estimates from Worldclaim, a public adjuster hired by the plaintiffs, Nationwide completely ignored those estimates claiming that it had no obligation to review the Worldclaim estimates of the Compass Pointe property.  Mr. Biggs stated:

> I reviewed some of them and determined that there was a lot of non-covered items in them along the lines of the wind versus water issues and decided that they were not a good tool for me to use.  And, of course, **I was under no obligation to use those**, and [it] was actually a tool that if it had been something that I could have used, I would have definitely used it.

(emphasis added)  Please see deposition of Mr. Jim Biggs, pp. 122-123, attached as Exhibit "I."  Further, Mr. Biggs' memory seems to have lapsed regarding the Worldclaim estimates of the Compass Pointe matter.  *Id.*  This is in contrast to the testimony he gave in *Carriage House* in which he discussed the Worldclaim estimate with colleagues but decided not to use it on the

10

pretext that he could not tell to which buildings the estimates applied. As part of its duty of good faith, Nationwide surely had an obligation to view the Worldclaim estimates of the Compass Pointe damages on more than the superficial level upon which Mr. Biggs viewed them. This is a genuine issue of fact.

## II.   CONCLUSION

Nationwide's argument falls far short of establishing that *no* genuine issue of material fact exists in this matter. This matter contains multiple disputed issues of material fact. Nationwide's memorandum does not exclude a single one. As such, Nationwide's Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ *Nathan M. Gaudet*
Nathan M. Gaudet (MSB 102608)
Matthew K. Brown (LA BAR (18571), T.A.
*Sullivan, Stolier & Resor, APLC*
909 Poydras Street, Suite 2600
New Orleans, Louisiana 70112
ngaudet@ssrlawfirm.com

**Attorney for plaintiffs, Sunquest Properties, Inc.
& Compass Pointe Apartments Partnership**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has this date been electronically filed using the CM/EFC service which will notify counsel of record via electronic mail of this filing.

New Orleans, Louisiana, this 2nd day of March, 2010.

/s/ *Nathan M. Gaudet*